J-S35042-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
KEVIN LEEMON HARRIS :
:
Appellant : No. 788 MDA 2025

Appeal from the PCRA Order Entered May 14, 2025
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s): CP-54-CR-0001954-2021

BEFORE: OLSON, J., MURRAY, J., and LANE, J.

MEMORANDUM BY LANE, J.: **FILED: NOVEMBER 13, 2025**

Kevin Leemon Harris ("Harris") appeals from the order dismissing his first, timely petition under the Post Conviction Relief Act[1] ("PCRA"). We affirm.

The Commonwealth charged Harris with attempted homicide, aggravated assault, strangulation,[2] and related offenses, in connection with his assault on and stabbing of Lilliana Fowler (the "Victim"). Appointed counsel, Jeffrey Markosky, Esquire ("Trial Counsel"), represented Harris at the jury trial. We summarize the trial evidence.

The Victim testified to all of the following. In November 2021, she, her friend, Kylie Cicero ("Cicero"), and others went to the home of Harris, whom the Victim did not previously know, and his brother, Kashif Harris ("Brother").

_____

[1] 42 Pa.C.S.A. §§ 9541-9546.

[2] *See* 18 Pa.C.S.A. §§ 901(a), 2702(a)(1), (4), 2718(a)(1).

Eventually, Cicero and the others left, and for a "few days," the Victim and Harris "hung out" together and consumed methamphetamine, and "things seem[ed] normal." N.T., 3/6/23, at 123-24. However, in his bedroom, Harris "flipped on" the Victim and became "really agitated" and aggravated. *Id*. at 123. Harris brandished a knife and "started slashing [her] with it." *Id*. at 125. Harris: stabbed the Victim in the rib cage, causing a collapsed lung, and in the buttocks; threatened to mutilate or cut her genitals; hit her in the head; used "hairspray or something . . . flammable, like[ an] aerosol type of can . . . to make a flamethrower . . . and caught [her] hair [and shirt] on fire;" strangled the Victim's throat "and kept saying, Why won't you die, Why won't you die?;" and told her she was not allowed to leave. *Id*. at 130, 132-37. The Victim initially fought back, but then "put [her] hands up" and tried to crawl away. *Id*. at 129. At some point thereafter, the Victim walked downstairs to get a drink. She did not think to leave the house because she was cold, it was cold outside, and she "wanted to put the covers back on and go back to whatever — unconscious [*sic*]." *Id*. at 139. The Victim thus returned to the bedroom. Subsequently, the Victim's friend Cicero arrived, along with Brother, and they called the police.

The Commonwealth also called Leahna Conney, M.D. ("Dr. Conney"), who treated the Victim, as an expert in the field of trauma surgery. Dr. Conney testified the Victim suffered a collapsed lung, which could have caused death. *See* N.T., 3/6/23, at 72, 75, 92. Additionally, the Victim had numerous

"slice wound[s]" in her buttocks, inner thigh, abdomen, wrist, and arm, and blunt trauma to her face. *Id*. at 84-91. An occupational therapist, who administered screening tests for a concussion, testified that the Victim showed signs of a concussion. *See id*. at 102-09.

The Victim's friend, Cicero, testified to the following. She, the Victim, and a friend named Brandon went to Harris' house around 7:30 p.m.; Brother was also present. Harris and the Victim used methamphetamine. Cicero, Brandon, and Brother left around 11:30 p.m., while the Victim stayed with Harris. The Victim appeared "normal" and did not have any cuts, bruises, bleeding, or stab wounds. *Id*. at 185. Three days later, around 2:00 p.m., Cicero, Brother, and a friend name Raekwon Smith ("Smith") returned to the house. Harris was there, "yelling and making it look as if he was hurt," and he stated that "he was stabbed in the groin area." *Id*. at 187. Cicero entered Harris' bedroom and saw the Victim, unconscious, "wrapped up in [a] blanket [and] covered in blood." *Id*. at 189. There was also blood on the mattress. "[T]hings were thrown everywhere" and the Victim's purse was "dumped out and scattered." *Id*. at 188-89. One of the men called the police.

Brother and Smith testified and corroborated Cicero's descriptions of the Victim and the room. *See* N.T. Trial, 3/7/23, at 275-76, 288.

Finally, the Commonwealth called Pottsville Bureau Police Officer Timothy Youse ("Officer Youse"), who responded to the scene. Upon entering Harris' room, he observed the Victim lying in the bed, bleeding, with a swollen

face. The Victim's clothes were "extremely bloody," and there was dry blood "all underneath her." N.T., 3/6/23, at 204. The Commonwealth played the video taken by Officer Youse's body worn camera.

Harris testified in his own defense to the following. He did not live at that house, which was his mother's house. Instead, he happened to go there because he had his car towed there. Harris was out walking with Brother when they encountered Cicero, the Victim, and Brandon. They all returned to his mother's house and used drugs, including methamphetamine. Harris described the Victim as "weird," as she carried around deer antlers, had knives, talked to herself, and talked "[a]bout dumping her stuff out." *Id*. at 390, 404. Nevertheless, Harris also thought the Victim "was cool" and asked her to stay and "chill." *Id*. at 391. They stayed at the house for several days. On the last morning, Harris' mother awoke at 4:00 or 4:30 a.m., and Harris and the Victim were lying in his bed under the blanket. Harris heard Brother's voice, and then Brother and Smith entered his room, with Smith telling Brother "to hurry up." *Id.* at 402. The Victim was "groaning" and "making noises." *Id*. Harris looked up and saw "it's coming down over top of [him], somebody's swinging [*sic*]." *Id*. at 402-03. Harris "tented the blanket up," but Smith "kept coming down on the blanket" with what Harris suspected was a rock. *Id*. at 403. When Harris "came to, it was daylight," the room was a "wreck," and the Victim was not moving. *Id*. at 404-05. Harris called out for his

mother, but instead, Brother, Cicero, and Smith came upstairs. Harris asked Brother for help, and denied that he stated he was stabbed.

At this juncture, we summarize that during his testimony, Harris explained he took drugs out of his car and into his mother's house because he did not have his key fob and thus could not lock the car door. A juror spoke out loud and Harris responded to him as follows:

> JUROR NO. 4: Just push the lock button.
>
> [Harris]: I wouldn't have been able to unlock it then. See, I could have pushed the lock button, but then would have been locked out.

N.T., 3/7/23, at 417. The following exchange then occurred:

> THE COURT: . . . Juror No. 4, did you say something to your neighbor?
>
> JUROR NO. 4: Just all he had to do was push it down, push the button.
>
> THE COURT: Push his hand down?
>
> [Harris]: No. He said all I had to do was push the lock button. But then I would have been locked out of my car.
>
> THE COURT: You can't — I'm going to instruct everyone to disregard what just happened. You cannot say things like that.
>
> In my instructions I told you, you are not to talk about the case with anyone. You're to pay attention and listen to everything that's said. . . .

*Id*. at 417-18.

A prior panel of this Court summarized:

> The trial court then directed a sidebar discussion[ and] asked the attorneys, "What do you want to do with No. 4?"

- 5 -

[Harris] requested a mistrial, arguing that Juror No. 4 was "talking to another juror, contradicting the testimony of [Harris]." The court [denied] a mistrial but concluded that dismissal of Juror No. 4 was warranted.

The parties were not sure, however, if Juror No. 3, to whom [Harris] had apparently directed the comment, said anything in response. The Commonwealth stated, "I think [Juror] No. 3 just kind of . . . shook his head yes. He didn't verbalize any response." The court again expressed reluctance to declare a mistrial[, as only the two jurors] were involved.[ Harris] stated, "[Y]ou may have to ask Juror No. 3, did this have any effect on him. He did nod, but that could mean many different things."

The trial court then excused all the jurors but numbers three and four. The court informed Juror No. 4 he [was] excused but did not ask him any questions. The court then asked Juror No. 3, "[D]id you hear what he said to you?" Juror No. 3 confirmed that he did, and the court asked additional questions[.]

***Commonwealth v. Harris***, 311 A.3d 606 (Pa. Super. 2023) (unpublished memorandum at 3) (paragraph break added and transcript citations omitted).

In response to the trial court's questions, Juror No. 3 stated: he did not respond to Juror No. 4's comment; however, he may have shook or nodded his head, as he looked at Juror No. 4 and then the witness stand; and he may have "nonverbally" acknowledged the other juror's comment because he "shook [his] head like, Why would you say that? Because then it started that [*sic*]." N.T., 3/7/23, at 421. "The parties declined to ask Juror No. 3 any questions. The court asked [Harris] if he were seeking removal of Juror No. 3, and [he] replied that he was not. [Harris] did not renew his request for a mistrial or ask to make inquiry of any other juror." ***Harris***, 311 A.3d 606 (unpublished memorandum at 4).

The jury found Harris guilty of: attempt to commit murder in the first degree;[3] two counts of aggravated assault; four counts of simple assault; two counts of recklessly endangering another person; and one count each of strangulation and terroristic threats.[4] On May 5, 2023, the trial court imposed an aggregate sentence of thirty to sixty years' imprisonment.

Harris filed a direct appeal, still represented by Trial Counsel. He raised one issue: whether the trial court erred in denying a mistrial based on the juror's improper statement. This Court concluded, however, that Harris waived this claim for failing to develop an argument "why, in light of the particular circumstances presented, Juror No. 4's comment deprived him of a fair trial." *Harris*, 311 A.3d 606 (unpublished memorandum at 7). Nevertheless, the panel stated that even if Harris had presented a reviewable issue, it would conclude no relief was due. The panel reasoned: (1) the trial court removed Juror 4; (2) Harris declined to question the remaining jurors if they overheard Juror 4's comment, and if so, whether it affected their ability to impartially render a verdict; and (3) Harris raised no claim that the jurors shared Juror 4's sentiment or that the comment infected the rest of the jury.

---

[3] With respect to this count, the jury further found the Victim suffered serious bodily injury.

[4] *See* 18 Pa.C.S.A. §§ 2701(a)(1), 2705, 2706(a)(1).

Thus, this Court affirmed the judgment of sentence. Harris did not file a petition for allowance of appeal with our Supreme Court.[5]

On December 19, 2024, Harris filed the underlying, timely *pro se* PCRA petition,[6] raising various claims of ineffective assistance of Trial Counsel and **Brady**[7] violations. The PCRA court appointed present counsel, Michael Fiorillo, Esquire ("PCRA Counsel"), who did not file an amended petition. The PCRA court conducted an evidentiary hearing, at which Harris and Trial Counsel testified. At the conclusion of the hearing, the court directed Harris to file a brief, and he complied.

On May 14, 2025, the PCRA court issued the underlying order, denying Harris' PCRA petition. Harris, still represented by PCRA Counsel, filed a timely *pro se* notice of appeal. The PCRA court then directed Harris to file a Pa.R.A.P.

_____

[5] After the period for filing a petition for allowance of appeal expired, Harris sought leave to file a petition *nunc pro tunc*. The Pennsylvania Supreme Court denied relief. **See Commonwealth v. Harris**, 34 MM 2024 (Pa. 2024) (order).

[6] This Court affirmed the judgment of sentence on December 22, 2023. The thirty-day period to file a petition for allowance of appeal expired on Monday, January 22, 2024. **See** Pa.R.A.P. 1113(a); **see also** 1 Pa.C.S.A. § 1908 (providing that when last day of any period of time referred to in any statute falls on Saturday, Sunday, or legal holiday, such day shall be omitted from computation). For PCRA purposes, Harris' judgment of sentence became final on that same day, and generally, he had one year, or until January 22, 2025, to file a PCRA petition. **See** 42 Pa.C.S.A. § 9545(b)(1), (3). As noted above, he filed the instant *pro se* petition on December 19, 2024.

[7] **See Brady v. Maryland**, 373 U.S. 83 (1963).

1925(b) statement of errors complained of on appeal, and Harris filed a *pro se* statement.[8]

_____

[8] This Court has explained:

> [H]ybrid representation is not permitted. Accordingly, this Court will not accept a *pro se* motion while an appellant is represented by counsel; indeed, *pro se* motions have no legal effect and, therefore, are legal nullities. When a counseled defendant files a *pro se* document, it is noted on the docket and forwarded to counsel pursuant to Pa.R.Crim.P. 576(A)(4), but no further action is to be taken.

**Commonwealth v. Williams**, 151 A.3d 621, 623 (Pa. Super. 2016) (citations omitted).

However, "[b]ecause a notice of appeal protects a constitutional right, it is distinguishable from other filings that require counsel to provide legal knowledge and strategy[. Thus,] this Court is required to docket a *pro se* notice of appeal despite [the appellant] being represented by counsel." **Id**. at 624. Here, Harris sent a *pro se* notice of appeal to this Court, which then forwarded it to the trial court. Although PCRA Counsel was attorney of record, we deem this notice of appeal timely and properly filed. **See id**.

With respect to the *pro se* Rule 1925(b) statement, however, there is no indication in the certified record that the trial court forwarded it to PCRA Counsel nor treated it as a legal nullity. **See id**. at 623; **see also** Pa.R.Crim.P. 576(A)(4). Indeed, the court accepted the *pro se* statement and addressed its merits. **See** Order, 6/30/25 (stating that "upon receipt of" Harris' Rule 1925(b) statement, the PCRA court submits its prior opinion in compliance with Pa.R.A.P. 1925(a)). PCRA Counsel has not filed a Rule 1925(b) statement.

Generally, the failure to file a court-ordered Rule 1925(b) statement will result in waiver of all issues on appeal. **See** Pa.R.A.P. 1925(b)(4)(vii). However, we deem a criminal defendant's attorney's failure to file a Rule 1925(b) statement to be *per se* ineffectiveness, for which the defendant is entitled to prompt relief. **See Commonwealth v. Andrews**, 213 A.3d 1004, 1010 (Pa. Super. 2019) (citation omitted). Here, the PCRA court has not commented on the untimely filing and has addressed all the issues raised

*(Footnote Continued Next Page)*

Harris presents six issues for our review:

1. Whether the [PCRA] court erred and abused its discretion in denying [Harris'] PCRA petition where the evidence established that [T]rial [C]ounsel failed to adequately develop issues on appeal, and as such, deprived [Harris] of effective assistance of counsel?

2. Whether the [PCRA] court erred and abused its discretion in denying [Harris'] PCRA petition as a result of [T]rial [C]ounsel's failure to request that the trial court poll the jury following Juror #4's interaction with [Harris] during his trial?

3. Whether the [PCRA] court erred and abused its discretion in failing to grant [Harris'] PCRA petition where the evidence established that [T]rial [C]ounsel failed to provide [Harris] with discovery, which deprived [Harris] of his ability to effectively assist [T]rial [C]ounsel?

4. Whether the [PCRA] court erred and abused its discretion in denying [Harris'] PCRA petition where [T]rial [C]ounsel failed to assert a **Batson**[9] violation during jury selection?

5. Whether the [PCRA] court erred and abused its discretion in denying [Harris'] PCRA petition where the evidence established that [Harris] did not receive effective representation as a result of [T]rial [C]ounsel's failure to challenge expert testimony?

6. Whether the [PCRA] court erred and abused its discretion in failing to grant [Harris'] PCRA petition where [[T]rial [C]ounsel failed to introduce evidence, including social media messages and testimony of a witness that would have been favorable to [Harris] at his trial?

_____

therein. Additionally, PCRA Counsel has filed an appellate brief, addressing the issues in the *pro se* statement. We therefore need not remand this matter for a new Rule 1925(b) statement nor PCRA court opinion. We proceed to review the appeal. **See id**.

[9] **See Batson v. Kentucky**, 476 U.S. 79 (1986).

Harris' Brief at 4-5 (unnecessary capitalization omitted and issues reordered).[10]

In Harris' first issue, he avers the PCRA court erred in denying relief on his claim that Trial Counsel was ineffective with regard to the direct appeal. We first note:

> With respect to our standard of review, we are limited "to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." We view the evidence of record in a light most favorable to the Commonwealth, as the prevailing party below. We are bound by the PCRA court's credibility determinations, unless those determinations are not supported by the record; however, we review the PCRA court's legal conclusions *de novo*.

**Commonwealth v. Flor**, 259 A.3d 891, 902 (Pa. 2021) (citations omitted).

> When evaluating claims of counsel ineffectiveness, we begin with the presumption that counsel is effective. In order to prevail on an ineffectiveness claim, a PCRA petitioner must comply with the test set forth by the United States Supreme Court in **Strickland v. Washington**, 466 U.S. 668 . . . (1984). In this Commonwealth, we have distilled . . . the following three-pronged test for ineffectiveness, which the PCRA petitioner bears the burden to prove: "(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error."

---

[10] The statement of questions involved and the argument section are inconsistent with regard to both the number and order of the issues. We remind PCRA Counsel that the argument section of a brief "shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part — in distinctive type or in type distinctively displayed — the particular point treated therein." Pa.R.A.P. 2119(a).

*Id*. (citations omitted).

On appeal, Harris contends Trial Counsel failed to consult with him after sentencing, and therefore "Harris was denied the opportunity to discuss appellate strategy." Harris' Brief at 16-17. Second, Harris asserts that Trial Counsel raised only one issue on direct appeal —the denial of a mistrial based on Juror 4's statement — yet the Superior Court panel deemed this issue waived. Third, Harris claims Trial Counsel should have presented a "challenge to the weight or sufficiency of the evidence."[11] *Id*. at 17.

In denying relief, the PCRA court credited Trial Counsel's testimony at the PCRA hearing. Counsel testified to the following: (1) both before and after sentencing, he discussed with Harris "which issues, if any, could be raised on appeal;" (2) Trial Counsel "had no recollection of [Harris] instructing him to raise numerous issues on appeal;" and (3) "[i]n fact, [Trial Counsel] advised [Harris] that in his professional opinion he only felt there was one issue to pursue, namely the juror interaction." PCRA Court Opinion, 5/13/25, at 5. Additionally, Trial Counsel testified he

> felt that any weight . . . or sufficiency of the evidence argument[ was] not meritorious because the Commonwealth had presented substantial and sufficient evidence at trial with testimony from the [V]ictim, three lay witnesses ( . . . Cicero, . . . Smith, and [Brother]), and police body camera footage.

*Id*. at 5. The PCRA court agreed with Trial Counsel. *See id*.

---

[11] Additionally, Harris avers Trial Counsel erred in not raising, on direct appeal, a claim of prosecutorial misconduct. We address this claim in his third issue.

After review, we determine the record supports the PCRA court's denial of relief. *See Flor*, 259 A.3d at 902. First, we observe that Harris fails to address the PCRA court's discussion, especially Trial Counsel's testimony and the court's crediting it. Harris ignores that this Court is bound by this credibility determination. *See id*. Second, Harris vaguely claims that Trial Counsel prevented the "opportunity to discuss appellate strategy," but does not explain what "appellate strategy" he would have wished to pursue. Harris' Brief at 16-17. To this end, Harris also ignores Trial Counsel's explanation that while Harris' defense was that "he didn't do it," counsel did not believe it was a "viable defense." N.T., 3/3/25, at 35. In any event, at trial Harris plainly presented his innocence defense to the jury: he denied causing the Victim's injuries, and claimed instead that while he and the Victim were sleeping, Brother and Smith entered his room and repeatedly swung with a rock. *See* N.T. Trial, 3/7/23, at 402-03.

Additionally, Trial Counsel opined, at the PCRA hearing, their "best defense" was that the Victim "exhibited some bizarre behavior," including regularly carrying "around deer antlers with a chain" and having "three to five knives on her" at the time of the incident. N.T., 3/3/25, at 36. Additionally, although the assault "lasted hours" and the Victim had a phone, she "[n]ever called [or] screamed out for help," and she did not try to leave when she went downstairs for water. *Id*. at 36-37. Trial Counsel thus "pointed [these] out to the jury." *Id*. at 36. Harris similarly fails to address this testimony.

Next, with respect to the juror issue, Harris wholly ignores the PCRA court's extensive discussion, as well as the Superior Court's direct appeal panel's decision. Although the panel determined he had waived his main claim, the panel also clearly stated that it "would disagree" with any claim that "the juror's comment warranted a new trial *per se*, presumably on the basis that [the juror] prejudiced [Harris'] guilt, which in turn deprived him of a fair trial." **Harris**, 311 A.3d 606 (unpublished memorandum at 7). In support, the panel considered that "Juror No. 4 did not claim knowledge of facts concerning [Harris] or his crimes," and ultimately, the trial court removed Juror No. 4. **Id**. at 8, 10.

With respect to Harris' claim that Trial Counsel should have challenged the sufficiency and weight of the evidence on direct appeal, we likewise determine no relief is due. Harris has failed, both before the PCRA court and this Court, to develop an argument. He does not explain which offense, of his eleven convictions, that he wishes to challenge, let alone what element of those offenses. Furthermore, although Harris broadly avers the trial testimony of Brother, Cicero, and Smith differed both from their own prior testimony and from the other witnesses' testimony, he does not identify any particular line of testimony or point of conflict. In any event, at trial, it was the jury's task to weigh any inconsistencies in the testimony, pass "upon the credibility of witnesses and the weight of the evidence produced," and the jury

was "free to believe all, part or none of the evidence." ***Commonwealth v. Dunkins***, 229 A.3d 622, 631 (Pa. Super. 2020) (citation omitted).

For the foregoing reasons, we conclude Harris has not established his underlying claims are of arguable merit. ***See Flor***, 259 A.3d at 902. Additionally, he has wholly failed to present any argument that: (1) "the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and [(2)] but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different." ***Id***. Thus, Harris' first issue warrants no relief.

The second issue in Harris' statement of questions involved is whether the PCRA court erred in denying relief on his claim that Trial Counsel was ineffective for not requesting a poll of the entire jury following Juror No. 4's statement. Harris does not present any discussion of this claim. Thus, he has waived it. ***See*** Pa.R.A.P. 2119(a) (requiring the argument section of a brief to include "such discussion and citation of authorities as are deemed pertinent").

Harris' third issue concerns alleged ***Brady*** violations. Our Supreme Court has explained:

> Under ***Brady*** and subsequent decisional law, a prosecutor has an obligation to disclose all exculpatory information material to the guilt or punishment of an accused[.] To establish a ***Brady*** violation, an appellant must prove three elements:

> [1] the evidence [at issue] was favorable to the accused, either because it is exculpatory or because it impeaches; [2] the evidence was suppressed by the prosecution, either willfully or inadvertently; and [3] prejudice ensued.

*Commonwealth v. Spotz*, 18 A.3d 244, 275-76 (Pa. 2011) (citations omitted)

Harris' argument is, in sum:

> In the instant matter, . . . Harris testified that he was unaware of testimony that was being proffered by various witnesses. Further, he was unaware of photographic evidence that was submitted at trial. To the extent that this information was not conveyed to [Trial Counsel], there was a clear *Brady* violation. Alternatively, if the information had been provided to [Trial Counsel], he failed to communicate it to . . . Harris, further supporting his claim for PCRA relief.

Harris' Brief at 18.

Within his first issue, Harris also characterizes these alleged actions as prosecutorial misconduct. *See id*. at 17. Under a different heading, entitled "Discovery," Harris also asserts: (1) he "was not provided all of the discovery that presumably[] was provided to" Trial Counsel; and thus (2) he "was under the reasonable belief that the prosecution failed to disclose much of the evidence that was presented at trial." *Id*. at 19. Harris reasons he was thus unaware the Commonwealth would present this evidence, and that he was "effectively deprived of the opportunity to assist [Trial Counsel] in preparing a defense" *Id*.

The PCRA court found: "[Harris'] testimony failed to demonstrate how the Commonwealth breached its duty to disclose." PCRA Court Opinion, 5/13/25, at 6.

After review, we determine the record supports the PCRA court's denial of relief. *See Flor*, 259 A.3d at 902. First, to the extent Harris avers the Commonwealth committed a *Brady* violation, he has waived this claim, as he could have raised it before or during his trial proceedings. *See* 42 Pa.C.S.A. § 9544(b) (stating "an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, [or] on appeal").

Second, with respect to Harris' claims that Trial Counsel did not object to the Commonwealth's alleged *Brady* violations, and did not provide him with discovery, Harris has failed to present, both before the PCRA court and this Court, a sufficiently developed argument. At the PCRA hearing, Harris vaguely averred the Commonwealth failed to advise him that Cicero, Brother, and Smith would testify, and failed to provide photos of knives. However, Harris did not offer any explanation why this evidence was exculpatory in nature, as required for a *Brady* violation, nor how it would have affected the outcome of his trial. We thus conclude that no relief is due on Harris' third issue.

In Harris' fourth issue, he avers Trial Counsel was ineffective for not raising a *Batson* challenge during jury selection. The Pennsylvania Supreme Court has explained:

In **Batson**, the United States Supreme Court held that the Equal Protection Clause forbids prosecutors from challenging a potential juror solely based upon the juror's race. . . .

When a post-conviction petitioner raises a **Batson** claim for the first time on collateral review, he . . . "bears the burden in the first instance, and throughout of establishing actual, purposeful discrimination by a preponderance of the evidence."

**Commonwealth v. Reid**, 235 A.3d 1124, 1188-89 (Pa. 2020) (citations omitted).

Harris avers, in sum:

In **Batson**[,] the Supreme Court held that peremptory challenges to remove a potential juror for the jury pool based on race violates the equal protection clause of the Constitution.

. . . Harris testified that there was a person of color in the jury pool and that person was removed by the prosecution using a peremptory strike. That issue was never raised by [Trial Counsel], and as such, waived. That waiver was prejudicial to . . . Harris.

Harris' Brief at 19 (paragraph break added).

The PCRA court considered Harris' testimony, at the PCRA hearing, "that there was a person of color in the jury pool who was removed by the prosecution using a peremptory strike." PCRA Court Opinion, 5/13/25, at 8. However, the court found that Harris "offered no evidence to substantiate this allegation." **Id**. Meanwhile, Trial Counsel testified that he "did not recall any person of color . . . on the jury panel, nor the Commonwealth having stricken a potential juror because of race. He recalled the Commonwealth having other, valid reasons for striking potential jurors." **Id**. The PCRA court specifically found this testimony credible.

- 18 -

After review, we determine the record supports the PCRA court's denial of relief. *See Flor*, 259 A.3d at 902. Harris again fails to address the PCRA court's discussion, let alone the testimony of Trial Counsel. We reiterate that we are bound by the PCRA court's credibility determinations, and thus conclude no relief is due on Harris' fourth issue.

In his fifth issue, Harris cites law describing "the *Frye*[12] standard for admissibility of expert testimony." Harris' Brief at 18. He then presents the following argument, in sum:

> Expert testimony was offered at . . . Harris's trial and there was no attempt to challenge the admissibility of the expert testimony. This is critical in that one of the medical expert's testimony related directly to the attempted murder charge for which . . . Harris was found guilty.

*Id*. at 19 (unnecessary capitalization omitted).

We note: "Under *Frye*, 'novel scientific evidence is admissible if the methodology underlying the evidence has general acceptance in the relevant scientific community.'" *Commonwealth v. Hopkins*, 231 A.3d 855, 868 (Pa. Super. 2020) (citation omitted). "*Frye* precludes expert testimony when the expert's methodology (1) is 'novel science' and (2) is not generally accepted in the relevant field." *Id*. at 871 (citations omitted).

Although Harris does not identify which expert witness allegedly gave what improper testimony under *Frye*, the PCRA court surmised that Harris

_____

[12] *See Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923).

- 19 -

refers to Dr. Cooney, the trauma surgeon. The court observed that at the PCRA hearing, Trial Counsel "correctly recalled Dr. Cooney's testimony pertain[ing] to the [V]ictim's wounds and collapsed lung, which [Dr. Cooney] opined could have caused [the Victim's] death." PCRA Court Opinion, 5/13/25, at 7. Trial Counsel testified that "[a]fter reviewing Dr. Cooney's curriculum vitae as well as her medical report, [he believed] it was never an issue that Dr. Cooney's opinion would not have been generally accepted by the medical community." *Id*. The PCRA court agreed.

We determine that Harris has waived his issue for failure to develop an argument on appeal. *See* Pa.R.A.P. 2119(a). Saliently, Harris does not acknowledge, let alone address, the PCRA court's rationale. Indeed, on appeal Harris does not even identify the particular expert opinion allegedly at odds with *Frye*, nor even the witness. Instead, he vaguely states that "one of the medical expert's testimony related directly to the attempted murder charge for which . . . Harris was found guilty." Harris' Brief at 19. Harris presents no discussion in support of a claim that the expert opinion was "novel science" or "not generally accepted in the relevant field." *Hopkins*, 231 A.3d at 868. Finally, Harris makes no reference to any of the three prongs of an ineffective assistance of counsel claim. *See Flor*, 259 A.3d at 902. Accordingly, no relief is due on Harris' fifth issue.

In Harris' last two issues, he presents the following statements, in sum:

Social media messages between . . . Harris and the alleged victim were never submitted and would have assisted in undermining the

> evidence against . . . Harris. [The Victim] testified that she was allegedly held against her will for several days, and the social media messages would have undermined her testimony.
>
> \* \* \* \* \*
>
> Starr Kline, who would have testified about a phone call between . . . Harris's brother . . . and . . . Kline wherein [Brother] threatened to kill . . . Harris was never presented to the jury, as . . . Kline was never called as a witness.

Harris' Brief at 21.

We determine Harris has waived both issues for lack of development and discussion of the relevant facts and legal authority. *See* Pa.R.A.P. 2119(a) (requiring argument to include "the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent"); *see also Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007) (stating this Court may find issues waived "when defects in a brief impede our ability to conduct meaningful appellate review," and "[t]his Court will not act as counsel and will not develop arguments on behalf of an appellant"). Neither issue includes any law, nor refers to Trial Counsel whatsoever. In the fifth issue, concerning social media messages, Harris fails to identify who failed to "submit[]" the evidence, and to whom. *See* Harris' Brief at 21. In his sixth issue, even if we were to deduce a claim of ineffective assistance of counsel, Harris has not addressed any of the three prongs of such a claim. Saliently, he has failed to discuss any law nor explain why he is entitled to relief.

For the foregoing reasons, we conclude Harris has failed to establish grounds for relief. We affirm the order denying his PCRA petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/13/2025